UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:17-CR-47-PPS-JEM |
| ) | |
| ANTONIO WALTON, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

From July 2015 to November 2016, Defendant Antonio Walton was one of the leaders of a large-scale drug conspiracy in Gary, Indiana. In all, 21 defendants were charged with various drug offenses. Walton in particular was charged with conspiring to possess with the intent to distribute 280 grams or more of cocaine, in violation of 21 U.S.C. § 846. [DE 485]. Walton's case proceeded to a jury trial on March 9, 2020. [DE 788]. After a six-day trial, the jury found Walton guilty of the charge. [DE 806].

On March 11, 2021, following the jury's finding of guilty, I sentenced Walton to 360 months imprisonment to be followed by five years' supervised release. [DE 1120]. Walton appealed his conviction and sentence to the Seventh Circuit arguing that it was improper for me to hold a trial at the onset of the COVID-19 pandemic and asserting that I imposed a substantively unreasonable sentence. [DE 1122; DE 1268-1]. On October 14, 2022, the Seventh Circuit affirmed Walton's conviction and sentence. [DE 1268]. Walton sought review in the U.S. Supreme Court [7th Cir. DE 60], but the Supreme

Court denied his petition. [7th Cir. DE 61]. Thereafter, Walton timely filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255 which is ripe for my review. [DE 1321; *see* DE 1330; DE 1346]. Walton's motion raises several arguments for relief based on ineffective assistance of counsel. [DE 1321]. For the reasons explained below, Walton's motion will be denied.

## Legal Standard

Let's begin with the standards governing my decision making. § 2255(a) allows a prisoner who has been sentenced to return to the court in which he was convicted and request his release on the grounds that his sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). A petitioner seeking relief under §2255 faces a tall order. Indeed, such relief is only available "in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)). *See also*, *Coleman v. United States*, 79 F.4th 822, 826 (7th Cir. 2023) (describing relief under §2255 as an "extraordinary remedy and therefore only available in limited circumstances").

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the assistance of counsel for his defense. U.S. Const. amend. VI. Here, Walton is requesting relief under §2255 claiming that he was denied his Sixth Amendment right to the effective assistance of counsel. [DE 1321]. When reviewing a §2255 motion

2

claiming ineffective assistance of counsel, I evaluate the claim using the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) ("Generally, claims of ineffective assistance of counsel are evaluated under a two-prong analysis announced in *Strickland*.").

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McDowell*, 497 F.3d at 761 (quoting *Strickland*, 466 U.S. at 694). If the petitioner fails to illustrate that either prong of the test is satisfied, there is no need for me to evaluate the other prong of the test. "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

Generally, I take a deferential view of attorney performance with the underlying assumption being that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690). For me to

3

decide that counsel's representation was inadequate, counsel's representation must have fallen "below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Making a showing that counsel's representation was constitutionally inadequate is not easy. *Jordan*, 831 F.3d at 846.

As for the second prong, to make a showing that counsel's inadequate representation led to prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee v. Galloway*, 106 F.4th 668, 673 (7th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Gilbreath v. Winkleski*, 21 F.4th 965, 989 (7th Cir. 2021). Counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *United States v. Hise*, 65 F.4th 905, 909 (7th Cir. 2023). A review of whether counsel's performance caused prejudice is "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005).

## Discussion

With this standard in mind, let's turn to the grounds for relief presented by Mr. Walton. First, Walton asserts that his counsel failed to adequately advise him regarding alternatives to trial. [DE 1321 at 4]. More specifically, he argues that his attorney informed him that the Government would not offer him a plea deal, but failed to inform him that he could plead guilty by way of a "blind" plea. [*Id.*] Walton argues that this

4

prevented him from obtaining a three-point reduction under the sentencing guidelines. [*Id.*]

There was a revolving door of lawyers who represented Walton along the way in his case. Walton was initially represented by two private attorneys, both of whom later withdrew. [DE 189-90; DE 349-50; DE 360]. Walton was then represented by attorney Bryan Truitt following his appointment as counsel. [DE 362-63]. During his arraignment on May 10, 2019, Walton, appearing by his attorney Bryan Truitt, entered a plea of not guilty. [DE 524]. During his representation of Mr. Walton, Mr. Truitt became unavailable, and Walton was subsequently appointed attorney David Jones. [DE 542-43]. Mr. Jones provided Walton with representation during his trial. [DE 788].

The right to effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."). If Walton's counsel received a plea offer from the prosecution but did not present it to his client, that would likely constitute constitutionally deficient performance. The Supreme Court has held that an attorney who fails to make a meaningful attempt to inform his client of an existing written plea offer has performed deficiently under the Sixth Amendment. *Missouri v. Frye*, 566 U.S. 134, 149 (2012). However, Walton has presented no evidence that the prosecution ever presented his attorney with a plea offer which was not presented to him. Walton surmises that it was likely his lawyer received a plea offer from the prosecution because, as stated by Walton, "over 95% of all federal cases are

5

resolved by plea agreement." [DE 1321 at 5]. As aptly stated by the government, such as a vague allegation absent support is insufficient to support a request for relief under §2255. [DE 1330 at 13].

Walton focuses most of his argument on the fact that his attorney did not advise him to plead guilty despite the absence of an offer from the prosecution. Here's what he tells me: "[c]ounsel's failure to inform Mr. Walton that he could plead guilty in a "blind plea", if indeed it was true that the government would not offer him a plea agreement…. constitutes ineffective assistance of counsel." [DE 1321 at 5].  Even if I determined that Walton's attorney's failure to inform him of a "blind plea" fell below an objective standard of reasonableness such that it was constitutionally deficient, any claim that this prejudiced Walton is too speculative. Walton makes several assumptions about what would have happened had he entered a "blind" guilty plea. First, Walton assumes that he would have met the requirements for the two-point acceptance of responsibility reduction. Second, Walton assumes that he would have made his plea in such a manner that the government would have agreed to the third point. Finally, Walton assumes that I would have sentenced him at the low end of the guidelines range.

Walton has not shown that he would have met the requirement for the reductions that acceptance of responsibility provides. In *Hicks v. United States*, 886 F.3d 648 (7th Cir. 2018) the Seventh Circuit addressed a similar argument to the argument Walton has put before me. In *Hicks,* a jury found the defendant guilty of multiple drug

6

offenses related to a drug ring he led on Chicago's south side. *Hicks*, 886 F.3d at 649. Hicks was sentenced to 360 months in prison and subsequently filed a pro se motion under §2255 arguing that he received ineffective assistance of counsel because there was a reasonable probability that a "blind" guilty plea would have led to a lower sentence. *Id*. at 650. Hicks' argument assumed a reduction in accordance with acceptance of responsibility and the Seventh Circuit made the keen observation that "the reduction is for accepting responsibility, not simply pleading guilty." *Id*. at 651. The application notes to the guidelines include a whole slew of factors which should be taken into consideration when determining whether a defendant qualifies for a decrease in offense levels.  *See*, U.S.S.G. §3E1.1, comment. (n.1).

This illustrates that Walton's assumption that a "blind" plea would have automatically garnered the two-point reduction for accepting responsibility is misplaced. *See also*, *United States v. Boyle*, 484 F.3d 943, 945 (7th Cir. 2007) ("merely pleading guilty does not entitle [a defendant] to acceptance points….as the commentary to the Guidelines and our caselaw make clear, this benefit is reserved for those who show contrition and remorse by giving an honest and full account of their offense conduct"). Additionally, for the three-point reduction Walton claims he would have received he must also assume that the government would have requested he received the additional point reduction. Without a motion from the government, Walton would not have received the third point reduction. *Hicks*, 886 F.3d at 651; *United States v. Nurek*, 578 F.3d 618, 624 (7th Cir. 2009).

But let's suppose that Walton is correct, and he received a three-point reduction in his offense level by taking a blind plea. Where would that have gotten him? Walton was assigned a criminal history category of VI. [DE 975 at 14, 20]. With Walton's offense level of 43 combined with a criminal history category of VI the guidelines suggested a sentence of life imprisonment. U.S.S.G. Ch. 5, Pt. A. At sentencing, notwithstanding how widespread and rampant Walton's criminal conduct was, I varied from the guidelines and gave Walton a sentence of 360 months—a sentence below what the guidelines suggested. [DE 1124]. I simply did not believe that a life sentence for a drug offense was appropriate.

Now, let's consider the counterfactual: suppose Walton was a criminal history 40 (as he now argues) because he received full credit for accepting responsibility. He still, of course, would've been in criminal history category VI. Under the guidelines, he would have been facing a suggested sentence of 360-Life. U.S.S.G. Ch. 5, Pt. A. The 360-month sentence I imposed was therefore within the hypothetical guideline range if his offense level was 40 as he argues. *Id*. Walton's entire argument hinges upon the assumption that he would have received a lighter sentence if the criminal offense level was calculated to be 40 and not 43. But that assumption doesn't hold up. As noted above, I already varied from the guidelines range of a life sentence to a sentence of 360 months. If I had believed that a greater variance was appropriate, I would have done so at the time of sentencing. But I didn't vary downward any further because I didn't think at the time (nor do I now believe) that any additional consideration was called for given

8

the gravity of Walton's offense and the breadth of his criminal history. In sum, Walton's argument assumes that he would have received a below guidelines sentence if he had been at an offense level of 40. Such a claim is far too speculative to illustrate prejudice.

The substantial amount of speculation required to show that Walton's sentence would have been different if his attorney informed him to take a "blind" plea is a fog in which his claim for ineffective assistance of counsel gets lost. Since we cannot determine that Walton has been prejudiced because he was not informed of the "blind" plea option, there is no need for me to engage in an analysis of whether the failure to inform Walton of the blind plea option fell below an objective standard of reasonableness. As I've already mentioned, "[a] defendant's failure to establish either prong of the test is fatal to his ineffective assistance of counsel claim." *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014).

Moving on to Walton's second argument for ineffective assistance of counsel, Walton argues that he "was denied the effective assistance of counsel at sentencing where counsel failed to file for a downward variance based upon COVID-19 making the conditions of confinement cruel and harsher." [DE 1321 at 6]. COVID-19 is a deadly virus which gripped the nation and the world. It undoubtedly had an impact on prison conditions as well. However, as pointed out by the prosecution, Walton has made no claims that he has or had a medical condition which would make him particularly susceptible to COVID-19 and place him at risk for severe illness or death. In fact, Walton does not mention his physical health at all in his brief. [*See* DE 1321]. In his reply

9

brief, Walton states "Mr. Walton does not have to put forth medical conditions for which would increase his risk of illness or death." [DE 1346 at 8]. Walton holds fast to his general assertion that COVID-19 "made the conditions of confinement harsher both physically and psychologically, than they would otherwise normally be." [DE 1321 at 6].

Walton again runs into issues with the prejudice prong of the ineffective assistance of counsel test. Absent any medical conditions that make him susceptible to serious illness or death due to COVID-19, it's extremely unlikely that I would have given him a downward variance considering the serious drug crimes of which he was convicted. When a defendant moves for a reduction based on COVID-19, the factors to be considered are: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *United States v. Dominguez*, 2020 WL 5700742, at *2 (N.D. Ind. Sept. 24, 2020).

Walton's presentence investigation report states that Walton's physical health issues involve "high blood pressure, high cholesterol, and pain in his left shoulder… [and] that the defendant also suffers from thyroid issues." [DE 975 at 18]. The information I had regarding Walton's health during sentencing does not suggest he would have been especially susceptible to COVID-19 and Walton has made no argument that he would have been especially susceptible to COVID-19. Walton was

given a below guidelines sentence and has failed to illustrate that he would have received an even lower sentence if his attorney had requested a downward variance due to COVID-19. Walton again fails to illustrate the prejudice required to make a showing of ineffective assistance of counsel.

Walton's third ground for relief states that he was denied effective assistance of counsel "where counsel failed to challenge the sentencing enhancement under §3B1.1." [DE 1321 at 9]. Walton states that "[a]ppellate counsel provided ineffective representation by failing to challenge this enhancement where theses affirmative acts are missing." [DE 1321 at 11-12]. Walton will again need to show (1) deficient performance and (2) that the deficiency prejudiced him to demonstrate that appellate counsel was constitutionally ineffective. *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). "Only if an ignored issue is clearly stronger than the arguments raised on appeal will the attorney's performance be considered constitutionally deficient." *Id*. Walton does not satisfy a showing of deficient performance.

Vanessa K. Eisenmann, Walton's appointed counsel on appeal, submitted a 78-page appellant brief (including attachments) on Mr. Walton's behalf. [7th Cir. DE 16]. Mr. Walton is correct that his appellate counsel did not challenge the §3B1.1 sentencing enhancement, but it is not clear that such an argument is "clearly stronger" than the other arguments presented on appeal. A significant portion of Mr. Walton's appellant brief raises arguments challenging the reasonableness of his sentence but does not mention the §3B1.1. enhancement. [*See* 7th Cir. DE 16 at 19-27]. Mr. Walton's appellate

brief discusses the impact of Walton's sentence in relation to his age, the disparities between the sentences of black defendants and white defendants, Mr. Walton's prior convictions involving non-violent drug offenses, and the disparities in the way the sentencing guidelines treat crack cocaine versus powder cocaine. [*Id*.] Mr. Walton has offered no basis for me to conclude that a challenge to the §3B1.1 sentencing enhancement would have been clearly stronger than the arguments counsel did present on appeal, and, frankly, I don't think a challenge to the §3B1.1. sentencing enhancement is a stronger argument than the arguments counsel presented on appeal.

It was plain as day from the evidence adduced at trial that Walton was an organizer/leader of a large and menacing drug ring. For the enhancement to apply, the government had to establish that the criminal activity in this case involved five or more participants or was otherwise extensive. That's the test under §3B1.1(a). U.S.S.G. §3B1.1(a). During the trial, Keana Porter, Mr. Walton's sister testified that he provided the crack cocaine that she sold at the trap house. [DE 868 at 734-35].[1] Ms. Porter also testified that she, Charles Gould, and Courtney Crouch would bring the proceeds from the drug operation to Mr. Walton daily. [*Id*. at 771-72]. Ms. Porter also testified that others such as Lafayette Caldwell would bring proceeds from the drug operation to Mr. Walton. [*Id*. at 811-13]. Courtney Crouch testified at trial that he first spoke with Mr. Walton about getting involved in selling crack cocaine at 50th and Massachusetts

---

[1] DE 868 is the full transcript of day four of Walton's jury trial held on 03/13/2020. The page number pin cites to this document refer to the page of the transcript in the upper right-hand corner of the page.

12

because he "just kn[ew] that's who stuff it was." [DE 869 at 962].[2] Crouch also testified that he gave the drug proceeds only to Mr. Walton. [*Id*. at 964]. Without relitigating this entire issue and going through a complete recital of all the testimony introduced at trial, I can say that there was more than enough evidence showing that Walton was an organizer or leader of the criminal activity involved in this case such that a challenge to the §3B1.1. sentencing enhancement was not a clearly stronger argument than the arguments raised on appeal. Appellate counsel was wise to leave that argument on the cutting room floor. In sum, there is no basis for a finding of ineffective assistance of counsel on appeal.

Walton has also filed a Motion/Request for an Evidentiary Hearing and Appointment of Counsel to Fully Develop Grounds One and Three of the §2255 Motion. [DE 1347]. The Seventh Circuit has explained that "[a] section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel. *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992). Absent an evidentiary hearing, I retain my discretion to decide whether counsel should be appointed. *Id*. For the reasons explained above, Walton's §2255 motion has no merit. Because Walton's request for relief under §2255 has no merit, I will not appoint Walton counsel or hold a hearing. Where the motion, findings, and records of the case show that a petitioner is not entitled to relief under §2255, there is no error in using my discretion to deny a

---

[2] DE 869 is the full transcript of day five of Walton's jury trial held on 03/16/2020. The page number pin cites to this document refer to the page of the transcript in the upper right-hand corner of the page.

13

request for appointment of counsel.[3] *Kapsalis v. United States*, 345 F.2d 392, 395 (7th Cir. 1965). *See also*, *Moreland v. Eplett*, 18 F.4th 261, 272 (7th Cir. 2021) (explaining that appointing counsel or holding a hearing is unnecessary where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief); *Howard v. Gramley*, 225 F.3d 784, 794 (7th Cir. 2000) (explaining that a refusal to appoint counsel should be reversed only where the defendant had a reasonable chance of winning with an attorney).

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Dalton v. Battaglia*, 402 F.3d 729, 738 (7th Cir. 2005). For the reasons set forth above, I find no basis for a determination that reasonable

---

[3] Walton has also filed a Verified Motion of Indigent Defendant to Notify the Court and Request Emergency Court Appointed Counsel for Prosecutorial Misconduct. [DE 1359]. In this motion, Walton argues that he suffered prosecutorial misconduct because a witness provided a false name during grand jury proceedings, the government made improper statements to the media, the government submitted an improper sentencing memorandum, that the government delayed his initial hearing, and that he was wrongfully detained. The records of the case show no merit in these arguments. Thus, I will also deny this motion for the appointment of counsel.

14

jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2). If Walton wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

**ACCORDINGLY**:

Defendant Antonio Walton's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. §2255 [DE 1321] is **DENIED** and a certificate of appealability is **DENIED**. Walton's Motion/Request for an Evidentiary Hearing and Appointment of Counsel to Fully Develop Grounds One and Three of the §2255 Motion [DE 1347] is also **DENIED**. Walton's Verified Motion of Indigent Defendant to Notify the Court and Request Emergency Court Appointed Counsel for Prosecutorial Misconduct [DE 1359] is also **DENIED**.

**SO ORDERED**.

ENTERED: December 30, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT